STATE, Plaintiff, vs. BALLENTINE, Defendant.

*March 9—April 11, 1939.*

*H. B. Rogers,* special counsel for the Board of State Bar Commissioners, for the plaintiff.

*Frank H. Hanson* of Mauston, for the defendant.

PER CURIAM. The complaint in this case contains three counts. The first charges misappropriation and embezzlement of a client's money; the second, wilfully misleading the court; and the third, perjury in connection with the transaction involved in the second count. The referee sustained the first two counts and found defendant not guilty upon the third. It will be convenient to consider the charges *seriatim.*

At the time of the trial defendant was forty-one years of age, married, but had no children. He lived in Milwaukee until 1933, and then moved to Wonewoc, where he is now engaged in practice. His general conduct in the profession had not been the subject of criticism up to the time of the charges here involved. The facts concerning the first count are largely undisputed. Defendant was retained by one Sokolowski to prosecute a claim against the Milwaukee Electric Railway & Light Company for personal injuries sustained in the spring of 1935. Defendant had this claim upon a contingent basis, which entitled him to a fee of one fourth of any amount received in settlement. The claim was settled on May 3, 1935, for the sum of $307, and a draft payable to defendant was delivered to him. Defendant cashed the check in Milwaukee where the settlement was made, and opened an account in his own name in the Bank of Wonewoc, depositing the sum of $260.08, which was largely, if not wholly, the

proceeds of the settlement. He drew checks for his own use against this account, reducing the balance to $168.97 by May 23, 1935. About May 18th, defendant received a letter from his client couched in somewhat violent terms demanding his money. On May 23d, he drew a check upon his account for $230.25 and mailed it to the client. The check was presented for payment on May 28th, and payment was refused because of insufficient funds. At the time the check was presented defendant was out of town on business connected with his practice, but on his return the following day he learned of the fact that the check was protested. He claims that he then had enough funds to pay the check in full, but he made no effort to do so or to communicate with his client. On July 3d, Sokolowski swore out a warrant against defendant for embezzlement, and the district attorney of Milwaukee county communicated with defendant, who thereupon wired to his client the full amount due upon the check. The referee found that the defendant did not have any intention of appropriating the client's money but that he was negligent in the transaction. The record here shows a conversion of about $63 by May 23d. The defendant had by that time only $168.97 left of the $307 collected. His own fee amounted to $76.75, and the balance of $63.28 represented the amount of his client's funds that he had appropriated. The referee exonerated defendant so far as any intention permanently to appropriate funds is concerned and attributed his conduct to negligence. There is no evidence of negligence in the transaction up to the time when the client's demand was made. Defendant had simply used portions of his client's money in response to his needs. Whatever neglect there was had to do with restitution. His delay in sending a check after receiving his client's demand is inadequately accounted for by his anger at the tone of the letter. Knowing of the dishonor of the check on May 28th, he did nothing about the matter until he was informed that a warrant had been issued. His promptness

thereafter was obviously in response to the need for protecting himself.

Without attempting at this point to assess the proper penalty or discipline applicable to this conduct, we characterize it without hesitation as open to severe criticism. The use of a portion of the funds, the issuance of a check with insufficient funds to meet it, and the neglect to make good the check until a warrant was issued for his arrest are so obviously reprehensible on the part of a lawyer that no elaborate exposition of the point should be necessary. The fact that this is an isolated instance so far as the record discloses may be an extenuating circumstance, but nothing that is offered as an explanation here has any reasonable tendency to excuse the conduct.

The second and third counts relate to the same transaction and may best be discussed together. On or about August 21, 1934, Walter Scott, Jr., and Luther Holly were arrested, charged with robbery while armed. On August 21st, Scott and Holly appeared in district court without counsel and waived preliminary examination on two charges. On the next day they appeared in the same court and waived preliminary examination as to a third charge. Scott and Holly appeared in municipal court before Judge MAX NOHL on August 27th and 28th. On these occasions they were arraigned, pleaded not guilty, and the matter was continued to September 12th. Thereafter, Scott's father retained defendant to represent them and promised him a fee of $100 for such service. Defendant was paid $25 on August 23d, and $20 on August 31st. At the time of their arraignment defendant secured an appointment to represent Scott and Holly upon a representation to the court that they were indigent defendants. On September 10th, they voluntarily appeared before the court, pleaded guilty, and were sentenced. Defendant then presented an affidavit for services, and was allowed $40 for services rendered in the municipal court on behalf of these defendants. Subsequently, Scott's father

complained to the judge that he had paid defendant for the work for which the county had also paid him and that defendant had made no refund to him. The matter was reported to the Board of State Bar Commissioners and defendant called in to explain the transaction. He insisted to the board that he had been retained prior to the proceedings in district court, had appeared in these proceedings, and that the $45 which he had been paid was paid prior to his appearance in municipal court. He also claimed that he had fully informed Judge NOHL of the payment for the prior services at the time he asked for appointment, and that the services for which he collected from the county were for services rendered subsequently to those for which his clients had paid. He was informed by counsel for the board that Judge NOHL did not so recall the transaction, and he was advised to confer with Judge NOHL. At a later hearing defendant testified that he had seen Judge NOHL, and that Judge NOHL did not remember whether defendant had made a full disclosure at the time of the appointment and had no recollection of the matter. Judge NOHL testified before the board that no disclosure was made to him that defendant had rendered services upon a preliminary examination and been paid $45 therefor; and that if these were the facts he might still have appointed defendant and allowed him compensation, but that he would not have done so without full inquiry into the matter. With respect to the interview with defendant at the suggestion of the board Judge NOHL testified that he told defendant that he knew that no such disclosure was made at the time of the appointment. On the basis of these facts the second and third counts were drawn. The second charged defendant with wilfully misleading Judge NOHL, and the third alleged perjury in that defendant under oath before the board falsely swore to the facts concerning the transaction.

The referee found that defendant did deliberately mislead Judge NOHL and that, while not guilty of wilful perjury be-

fore the board, his testimony in the respects charged was untruthful. It is clear from an examination of the record that defendant testified before the board that he had appeared for Scott and Holly on their preliminary examination, and that he had made a full disclosure to Judge NOHL that he had been paid a fee prior to appointment; that he was appointed after such disclosure; and that during the hearing he had a talk with Judge NOHL at which time the judge claimed that he did not remember anything about the transaction. The evidence shows that all these statements were untrue. In fact, his own books disclose the fact that $20 of the fee received by him was paid after his appointment by the court. The referee charged off some of defendant's untruthful statements to lack of memory, some of it to wishful thinking, and excluded perjury from the situation. We accept that conclusion with some misgiving. The evidence points clearly, however, to the fact that defendant did wilfully mislead the court into making an appointment without disclosing his arrangements with his client and the fact that he had already received a part of his fee. His testimony before the board of bar commissioners was in several important respects untruthful, and while there is room for the inference that it did not constitute wilful perjury, it certainly fell far short of a full, frank, and accurate disclosure of the facts, and viewed as charitably as possible does not add to defendant's stature as a man or a lawyer. Defendant's conduct which gave rise to the second count when considered in connection with Count 1 cannot be passed over with a mere reprimand. The recommendation is a period of one-year suspension. We regard this as not unduly harsh or out of proportion to the offense disclosed by the evidence. The imposition of penalties upon members of the bar is always an unpleasant one, and the temptation to yield to sympathy at the plight of a brother lawyer is quite strong. The duty of preserving the integrity of the bar requires us to put aside these impulses when the facts clearly call for disci-

pline. We conclude that the report of the referee should be accepted.

It is ordered and adjudged that the defendant, Paul G. Ballentine, be suspended from the practice of law for a period of one year from the date of the entry of this order, and for such period thereafter as shall expire before his license to practice law is restored, and he is reinstated as a member of the bar by this court, upon the presentation of proof that the expenses of this proceeding have been paid, and upon the further condition that he shall, before being reinstated, satisfy the court both by his conduct from this time forward and by assurances then given the court that he will not, if reinstated, be guilty of such conduct as that involved in the charges made in the complaint in this action.